IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS A. SANTIAGO RIVERA,

    Plaintiff,

v.                                          CIVIL NO. 97-1656

JOHN H. DALTON,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has moved for summary judgment petitioning the dismissal of plaintiff's claims which plaintiff has opposed. The Court having reviewed the documents in the record as well as the applicable law hereby grants defendant's request.

### BACKGROUND

Plaintiff instituted these proceedings charging that defendant engaged in employment discriminatory practices violative of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Service Report Act of 1978, 5 U.S.C. §§ 7201 *et seq.*, 42 U.S.C. § 1981 and the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* Further, plaintiff asserts a breach of contract claim by virtue of our supplemental jurisdiction under 28 U.S.C. § 1367.

AO 72
(Rev 8/82)

## THE FACTS

The following facts are not in dispute.

Plaintiff is employed as a bartender by the Morale, Welfare & Recreation (MWR) Department at the Roosevelt Roads Naval Station in Ceiba, P.R.

On **September 19, 1995** plaintiff made initial contact with an Equal Employment Opportunity (EEO) counselor complaining that he had not been allowed to return to his former position as bartender nor work his usual 78-80 hours per pay period after the reopening of the facilities due to discrimination based on sex, handicap and national origin.

This complaint concluded by way of an informal resolution dated **November 9, 1995** but executed on **November 27, 1995**.

On **January 4, 1996** all MWR employees were advised of imminent reduction of personnel and conversion from full-time to part-time status mandated by fiscal reasons.

On **January 16, 1996** plaintiff was notified of a Business Based Action - Change in Employment Category ("BBA") advising him that he had lost his status as a permanent employee. Further, the memorandum indicated that "the number of hours you work will change according to the needs of the facility at which you work."

On **February 22, 1996** plaintiff met with the EEO counselor.

CIVIL NO. 97-1656                                              Page - 3

On **May 30, 1996** plaintiff was given a Notice of Final Interview. According to this memorandum, plaintiff had complained at the February 22, 1996 meeting of discrimination based on his national origin because of the change of employment category notified in the BBA. The memorandum advised plaintiff of his right to file a complaint in the event that he believed he had been the victim of discrimination.

On **June 3, 1996** plaintiff filed a complaint alleging discrimination based on national origin. In the space provided for the dates when the alleged discrimination took place plaintiff wrote: "January 4 and January 16, 1996 with purported 'business based action'".

In the June 3, 1996 complaint plaintiff described the challenged discriminatory conduct as the "business based action" which "takes away vested property rights of a group of employees, such as: holiday pay, Sunday pay, vacation leave and sick leave [and] jeopardizes their medical insurance coverage".

The relief petitioned in the June 3, 1996 complaint was "[r]escission of the 'business based action'", adherence to the seniority system and "[c]ontinued entitlement to vested property rights such a holiday pay, Sunday pay, vacation leave and sick leave."

CIVIL NO. 97-1656                                                                 Page - 4

In the Report of Investigation dated **January 30, 1997** the officer concluded that the decision to implement the BBA was not discriminatory. The Report stated that "the sole issue accepted for investigation was the conversion of the complainant, along with all other food service and janitorial employees of the club system from full time Permanent to Flexible Employment".

On **August 28, 1996** plaintiff was given a performance evaluation for the period 1995-96 with an overall rating of satisfactory. However, his performance was rated as "less than satisfactory" in three out of seven rating categories and the document included remarks to the effect that plaintiff "had a difficult time keeping up with the volume of customers... his rapport with customers is weak and needs to be improved."

This evaluation was never made part of plaintiff's Official Personnel File.

On **September 24, 1996,** the 1995-96 evaluation was changed to satisfactory in all areas and all negative remarks were deleted.

Plaintiff did not suffer a reduction of hours or pay as a result of his final evaluation for the year 1995-96.

Plaintiff's evaluation for the previous year, i.e., 1994-95, also rated him as satisfactory in all areas and the only remark included was to the effect that he was a satisfactory employee.

CIVIL NO. 97-1656                                                    Page - 5

On **October 18, 1996** plaintiff filed a second administrative complaint alleging discrimination and retaliation. According to the document, the claim was based on the BBA as well as the August 1996 evaluation. Additionally, in the description of the claim, plaintiff included the reduction of working hours and his right to a minimum 40 hours of employment pursuant to the settlement agreement.

In the space allotted for requested corrective actions, plaintiff listed: rescission of the BBA, adherence to the seniority system, continued entitlement to holiday pay, vacation and sick leave, prohibition from discrimination or retaliation and compensation. No mention was made of the informal resolution agreement.

On **November 9, 1996** plaintiff was advised that the only charge of the second complaint to be investigated would be the retaliation claim based on the September 21, 1996 evaluation. According to the memorandum the conversion from full time permanent employee to a flexible employee was already under investigation. Further, the alleged breach of the Informal Resolution was rejected as superseded by the BBA.

On **December 2, 1996** plaintiff appealed the rejection of two of the claims asserted in the second discrimination complaint. Counsel for plaintiff indicated that management had failed to comply with

CIVIL NO. 97-1656                                                          Page - 6

the terms of the settlement agreement and that plaintiff wished to "reinstate his previous EEO case."

On **January 29, 1997** plaintiff was advised that his appeal regarding the rejection of two of his claims was being dismissed as untimely.

On **October 29, 1997** the EEOC upheld the dismissal of the alleged breach of the settlement agreement as untimely for having failed to notify the agency within 30 days as required by 29 C.F.R. § 1614.504(a).

On **June 18, 1997** a Report of Investigation was issued regarding plaintiff's performance appraisal or evaluation, the only issue approved for investigation from the second discrimination complaint. The officer concluded that even though errors had been committed in the manner in which the performance rating had been handled it did not impact plaintiff's overall rating.

### SUMMARY JUDGMENT STANDARD

The purpose of the summary judgment mechanism is to avoid unnecessary trials by ascertaining whether material facts are in dispute. In order to prevail at this stage of the proceedings defendant herein, as movant, must establish the absence of relevant facts in controversy and his entitlement to a judgment based on the applicable law. Feliciano v. State of R.I., 160 F.3d 780 (1st Cir. 1998), Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14 (1st Cir.

CIVIL NO. 97-1656                                                                                 Page - 7

1998). See also Michelson v. Digital Fin. Services, 167 F.3d 715, 720 (1st Cir. 1999) (defendant may meet his burden "by pointing to the absence of adequate evidence supporting [plaintiff's] case.") Plaintiff, on the other hand, cannot limit her role to pointing to facts in controversy but must also present adequate evidence substantiating each fundamental component of her claim. Hodgens v. Gen. Dynamics, Inc., 144 F.3d 151, 158 (1st Cir. 1998); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Summary judgment may be appropriate even in cases involving discriminatory *animus* when the evidence of motive adduced by the party opposing the motion hinges on unsupported conjectures. Angulo-Alvarez v. Aponte de la Torre, 170 F.3d 246, 249 (1st Cir. 1999) Hodgens, 144 F.3d at 167; Fennell, 83 F.3d at 535; Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); Medina Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5,8 (1st Cir. 1990).

**FEDERAL EMPLOYEE**

Title VII, specifically 42 U.S.C. § 2000e-16, bars discrimination "based on race, color... or national origin" in federal employment. This provision has been found applicable to personnel actions affecting civilian employees of the various military departments, including the Navy. See Randall v. U.S., 95

AO 72
(Rev 8/82)

F.3d 339, 343 (4th Cir. 1996), cert. denied 519 U.S. 1150, 117 S.Ct. 1085, 137 L.Ed.2d 219 (1997) ("Congress intended to include ... civilian employees of the military department... within the reach of Title VII".) Thus, we see no reason for excluding plaintiff from Title VII coverage particularly since he acknowledges his status as a civilian employee.[1]

### TITLE VII - EXCLUSIVE REMEDY

Title VII of the Civil Rights Act of 1964 as amended, "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. G.S.A., 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402, 413 (1976). "[W]here the gravamen of the complaint is Title VII discrimination, the only remedy available is under Title VII." Rivera-Rosario v. U.S. Dep't of Agric., 151 F.3d 34, 38 (1st Cir. 1998).

It appearing that the thrust of the allegations are premised on discrimination and that all claims asserted in the complaint arise from the same underlying conduct, all non-Title VII causes of action must be dismissed.

Plaintiff has attempted to validate a separate cause of action for breach of contract based on the alleged non-compliance with the informal resolution agreement of November 1995. However, we find

---

[1] In the Preliminary Statement of the complaint plaintiff describes defendant's wrongful conduct "while [plaintiff was] employed by the Department of the Navy".

that given the aforementioned statutory limitations plaintiff is circumscribed to any relief he may be entitled to under Title VII for either breach of the informal resolution and/or for retaliation.

## BREACH OF INFORMAL RESOLUTION AGREEMENT

Settlement of discrimination claims at the agency level is advocated by the regulations issued by the EEOC.

> Each agency shall make reasonable efforts to voluntarily settle complaints of discrimination as early as possible in, and throughout, the administrative processing of complaints, including the pre-complaint counseling stage. Any settlement reached shall be in writing and signed by both parties and shall identify the allegations resolved.

29 C.F.R. § 1614.603 (1999).

The regulations further provide a detailed procedure in situations of alleged non-compliance with the terms of a settlement agreement with specific time limitations. Particularly, § 1614.504 reads:

> (a) Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties... If the complainant believes that the agency has failed to comply with the terms of a settlement

agreement... the complainant shall notify the EEO Director, **in writing,** of the alleged noncompliance within **30 days** of when the complainant **knew or should have known** of the alleged noncompliance. The complainant may request that the terms of the settlement agreement be specifically **implemented or,** alternatively, that the complaint be **reinstated** for further processing from the point processing ceased.

(emphasis ours).

It is evident that the agency should be given the first opportunity to address any alleged breach issue. Further, the regulations clearly mandate that notice be made in writing and in a timely manner. Lastly, in the event of a breach two options are given to the complainant: either enforcement of the agreement or reinstatement of the original claim for further processing.

Plaintiff was explicitly informed of the procedural requirements for bringing alleged infringements to the attention of the Navy as well as the pertinent time limitations to do so. The informal resolution agreement copied *verbatim* this portion of § 1614.504 previously cited. However, plaintiff has not presented any evidence in this action certifying that he alerted the Navy of the breach of the resolution **in writing** within the 30 days provided for both in the regulations and in the informal agreement nor that

he demanded compliance of either or the two options given. Plaintiff merely argues that he did inform the EEO counselor of the breach at their February 22, 1996 meeting. Even assuming that a verbal notification would suffice, plaintiff's self-serving version is not corroborated by any of the other documents generated during that period of time. No mention was made by the EEO counselor of a breach claim in summarizing the scope of the February 22, 1996 interview. Further, plaintiff's first complaint submitted on **June 3, 1996** contains no reference to a breach of the informal resolution either in the description of the charged conduct nor in the relief requested. According to the evidence in the record, it is not until the second complaint was submitted in **October 1996** that plaintiff for the first time raised his contention that the BBA contravened the informal resolution agreement **and** petitioned a relief consonant with the regulation, i.e., reinstatement of his original claim of September 1995. Prior to October 1996 plaintiff's grievances were strictly limited to challenging the effects of the BBA from the standpoint of one of the many similarly situated employees affected by their conversion to part-time flexible employees.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Pursuant to § 2000e-16(b) the Equal Employment Opportunity Commission (EEOC) is responsible for enforcing the anti-discrimination provisions of § 2000e-16(a) applicable to federal

CIVIL NO. 97-1656                                                              Page - 12

employees. As part of these duties, the EEOC has issued comprehensive regulations establishing detailed procedures for disposing of discrimination grievances at the administrative level with specific time limitations.

Federal employees alleging discrimination must exhaust the administrative scheme in a timely manner as provided for in the regulations prior to approaching the courts for relief. See Brown v. G.S.A, 425 U.S. at 832-33, 96 S.Ct. at 1967-68, 48 L.Ed.2d at 411 (§ 2000e-16 "does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers."). Even though the various terms provided for in the regulations for prosecuting discrimination claims are not jurisdictional in nature, they will be enforced absent evidence of equitable tolling. See Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); Roman-Martinez v. Runyon, 100 F.3d 213 (1st Cir. 1996); Jensen v. Frank, 912 F.2d 517 (1st Cir. 1990).

Assuming, as plaintiff contends, that his claim for breach of the agreement accrued on or about **January 30, 1996** when he received his first paycheck after the implementation of the BBA, he failed to exhaust his administrative remedies within the time limitations set forth in the regulations. No **written** notice was provided to the Navy within 30 days thereafter alerting defendant of: (1) the

CIVIL NO. 97-1656                                                Page - 13

alleged violation, and (2) plaintiff's choice of one of the two alternate remedies afforded for an infringement.

Accordingly, plaintiff's claim for breach of a settlement agreement under Title VII is **DISMISSED** for failure to exhaust his administrative remedies in a timely fashion.

### RETALIATION

The remaining claim in the complaint is one for retaliation. According to defendant, the only retaliation claim properly before us is premised on the **August 28, 1996** performance evaluation. Plaintiff, on the other hand, contends that he was subject to additional retaliation in the number of hours assigned for work subsequent to the effective date of the BBA.

We find no evidence in the second discrimination complaint dated October 18, 1996 suggesting that plaintiff pursued a retaliation claim based on conduct other than his initial evaluation which was the only claim accepted for investigation according to the letter of November 8, 1996. Nor do we infer a reprisal claim in plaintiff's appeal therefrom on December 2, 1996.

As previously mentioned, the scope of our review is limited to those issues that were timely raised at the administrative level. The Report of Investigation dated June 18, 1997 examined plaintiff's retaliation claim based exclusively on his initial performance

CIVIL NO. 97-1656                                                    Page - 14

appraisal. The investigator determined that the administrative procedural blunders did not have an impact on his overall rating.

Plaintiff is entitled to a trial *de novo* regarding his retaliation claim based on the original evaluation. <u>Chandler v. Roudebush</u>, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); <u>Roman-Martinez v. Runyon</u>, 100 F.3d at 216. The analysis established under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) has been used for retaliatory claims in Title VII actions. Thus, absent direct evidence of discriminatory animus, plaintiff must initially establish a *prima facie* case of retaliation by showing that: (1) he filed a discriminatory claim; (2) he suffered an adverse employment action; and (3) a causal connection between these two events. <u>Hernandez-Torres v. Intercontinental Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir. 1998).

Even assuming that the August 28, 1996 performance evaluation was somehow deleterious, plaintiff has failed to establish the requisite adverse employment action. There is no indication that he was subject to "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." <u>Hernandez-Torres</u>, 158 F.3d at 47. It is undisputed that this document was never made part of plaintiff's personnel file[2] and that it was substituted on

---

[2] <u>See</u> Sworn Statement of JANE THOMPSON ¶ 7.

CIVIL NO. 97-1656                                                      Page - 15

September 24, 1996 for one which featured satisfactory rating in all areas and contained no negative remarks. Plaintiff acknowledged in his deposition that there was no change in the number of hours worked as a result of the initial evaluation. Further, the overall satisfactory rating obtained was the same as the one reflected in his evaluation for the previous year.

Accordingly, we find that the facts before us do not support a retaliation claim based on the August 1998 evaluation and therefore, this claim is also **DISMISSED**.

### CONCLUSION

Based on the foregoing, defendant's Motion for Summary Judgment (docket No. **40**)[3] is **GRANTED** and the complaint filed in this case is hereby **DISMISSED**.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 17th day of November, 1999.

                                                    RAYMOND L. ACOSTA
                                                    United States District Judge

---

[3] See also plaintiff's opposition (docket No. **34**); defendant's Reply (docket No. **41**) and plaintiff's Sur-Reply (docket No. **42**).